UNITED STATES of America, Appellee,

v.

Charles WHITNEY, Appellant.

No. 84–2537.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1985.

Decided April 4, 1986.

Rehearing and Rehearing En Banc Denied May 8, 1986.

458

Springfield Baldwin, St. Louis, Mo., for appellant.

Dean R. Hoag, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Charles Whitney appeals from his conviction by a jury for the robbery of a United States Post Office in violation of 18 U.S.C. § 2114. Whitney, by appointed appellate counsel and by pro se brief, argues principally the following points for reversal: (1) the district court[1] erred in refusing to suppress tainted eyewitness identification testimony; (2) he was prejudiced by evidence of other crimes and bad acts brought out at trial; (3) he was prejudiced by improper closing argument by the government; (4) he received ineffective assistance from his appointed trial counsel; and (5) the court erred in not granting his motion for a new trial. We affirm.

Whitney and two others were arrested for the robbery on May 10, 1983 of the United States Post Office, Chouteau Branch Station, St. Louis, Missouri. Eyewitness testimony indicated that one of the robbers had held a gun on the postal employees while Whitney jumped over the counter and robbed the cash box. He was charged with robbery of a United States Post Office with the use of a deadly weapon, in violation of 18 U.S.C. § 2114, and with conspiracy to rob a United States Post Office with the use of a deadly weapon. A jury trial on October 1–3, 1984 resulted in a verdict of guilty on the robbery charge and not guilty on the conspiracy charge. The court sentenced Whitney to twenty-five years imprisonment.

■ Alpha Rena Sanders, the postal employee whose customer service counter was robbed, identified Whitney from a photographic display. Whitney contends that the display was overly suggestive and that Sanders' identification was unreliable. He claims that he was the only light-complexioned black man in the display and that his photograph was larger than some of the others. He therefore argues that the court erred in not suppressing Sanders' identification.

In *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the Supreme Court concluded that "reliability is the linchpin in determining the admissibility of identification testimony . . . ." The factors to be considered in determining reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.*

United States Magistrate David Noce viewed the eight photographs used in the display and found nothing suggestive about them or the display procedure. He also carefully considered the reliability of Sanders' photographic identification under the *Brathwaite* factors. He concluded that even though Sanders only viewed the robber three or four seconds during the crime and the photographic display took place over eight months later, her identification was sufficiently reliable. Sanders had at all times expressed absolute certainty that Whitney was the robber and her descriptions were accurate and consistent.

We find no reason to disagree with the magistrate. Nothing in the record indicates that the photographic display was overly suggestive, much less so unnecessarily suggestive that there was " 'a very substantial likelihood of irreparable misidentification.' " *Id.* at 116, 97 S.Ct. at 2254 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). The court was correct in refusing to suppress Sanders' photographic identification, and any in-court identification by her was not tainted.

---

1. The Honorable William L. Hungate, United States District Judge, Eastern District of Missouri.

■ Whitney also challenges his identification by Alberto Garcia, a postal employee and eyewitness to the robbery. Garcia had been unable to identify anyone from photographic displays or lineups. He was present at the first of two pretrial suppression hearings attended by Whitney, but he did not testify. He was subpoenaed by Whitney to testify at the second suppression hearing, and it was during this testimony that the challenged identification took place.

Using the *Brathwaite* analysis the magistrate found that Garcia's confrontation with Whitney at the second suppression hearing was suggestive, but that this confrontation had occurred at the request of Whitney and not the government. The magistrate further found that Garcia's identification was reliable under *Brathwaite* due to his lengthy observation of the robber during the crime and his certainty in the hearing that Whitney was the robber. The court thereafter denied Whitney's motion to suppress Garcia's identification.

Whitney's main claim is that the identification was tainted because Garcia was being coached during his testimony by Postal Inspector T.J. Smith. The only evidence in the record of any coaching is defense counsel's objection to "some shaking of heads and some looking back and forth" between Garcia and Smith. The magistrate instructed Garcia to "[b]e sure and answer the questions that the attorney is asking you." This apparently occurred prior to Garcia's identification of Whitney, and the magistrate did not mention the incident in his Memorandum.

It would be pure speculation for us to conclude from this record that Garcia's identification of Whitney was coached and therefore tainted. We cannot determine that the "shaking of heads and [the] looking back and forth" was coaching, nor indeed are we persuaded that the activity related to Garcia's identification of Whitney.

Garcia's identification was sufficiently reliable and there was not "'a very sub-stantial likelihood of irreparable misidentification.'" *Id.* at 116, 97 S.Ct. at 2254. We therefore uphold the court's refusal to suppress his testimony and we find that any later in-court identification by Garcia was not tainted.

■ Whitney next claims that evidence of other crimes and bad acts brought out at trial by the government and Inspector Smith was highly prejudicial. He contends that the court's refusal to grant his motions for mistrial constituted error, and in fact he alleges plain error under Fed.R. Crim.P. 52(b). Since these incidents were properly brought to the attention of the trial court, we need not limit our review to plain error.

■ The first incident occurred during redirect examination by the government of Rhonda Hunt, Whitney's girlfriend. The Assistant United States Attorney asked the following question:

Q. Was that—your attempt to shoot out the tires of his car, was that before or after he tried to run over you with the car?

Defense counsel objected and moved for a mistrial. The court sustained the objection, had the question stricken from the record, and instructed the jury to disregard it. The motion for mistrial was denied.

■ The second incident occurred during redirect examination by defense counsel of Inspector Smith.

Q. Inspector Smith, did you ever make any effort to check out and determine whether Charles Whitney had, in fact, lost any weight between the two times that Witness Sanders claims she had seen him?

A. Only to the extent that I obtained the mug photo from the time he was arrested on May 12th for the tampering and stealing over a hundred and fifty—

At that point defense counsel objected and moved for a mistrial. The objection was sustained, the answer was stricken from the record, and the motion for mistrial was denied.

"The decision to grant or deny a motion for mistrial is a matter within the sound discretion of the district court. Only a showing of clear abuse of discretion will warrant reversal on appeal." *United States v. Mooney,* 769 F.2d 496, 498 (8th Cir.1985). The question asked by the Assistant United States Attorney in the first incident was highly questionable and we do not condone it. We recognize, however, that " '[t]he trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.' " *Williams v. Mensey,* 785 F.2d 631, 637 (8th Cir.1986) (quoting *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 531 (8th Cir.1975)). Similarly, the trial court is in a better position to determine what effect an inadvertently improper statement by a witness had on the jury. In light of the court's prompt actions to cure the prejudicial effects of these incidents and in light of the strength of the government's case against Whitney, we cannot say that the court abused its discretion in denying both motions for mistrial.

■ Whitney also challenges the court's refusal to grant him a mistrial based on improper closing argument by the government. The most questionable statement made by the Assistant United States Attorney was that the jury had to believe that the government witnesses had lied in order to acquit Whitney. In *United States v. Reed,* 724 F.2d 677 (8th Cir.1984), the prosecutor made the same argument in closing. We noted that "[t]his form of argument is improper because it involves a distortion of the government's burden of proof." *Id.* at 681 (citing *United States v. Vargas,* 583 F.2d 380, 386–87 (7th Cir.1978)).

The court sustained most of Whitney's objections to the government's argument and gave curative instructions on credibility determinations and on the government's burden of proof. Once again we do not condone the actions of the Assistant United States Attorney, but in light of the court's curative actions and the strength of the government's case, we cannot say that his arguments "were so prejudicial as to require reversal." *Id.* at 681 (citations omitted).

■ Whitney next alleges that he received ineffective assistance from his appointed trial counsel. Whitney points out numerous examples of what he claims was ineffective assistance, and these examples basically fall under the categories of failure to investigate, failure to develop and use favorable evidence, failure to impeach government witnesses, and failure to make motions requested by Whitney.

Whitney's ineffective assistance of counsel claim must be analyzed under the two-pronged test in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. "Counsel is presumed to have rendered effective assistance." *Hill v. Lockhart,* 731 F.2d 568, 572 (8th Cir.1984) (citation omitted), *aff'd,* —— U.S. ——, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

While we note that the quality of representation given to Whitney by his appointed trial counsel may have been less than Whitney desired, we cannot say that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Whitney's trial counsel had a difficult and unenviable task because Whit-

ney insisted on aiding in his own defense to the point of actually hindering it. He beseiged the court with lengthy pro se motions, some of which his trial counsel also made and some of which his trial counsel refused to make. He continually disagreed with trial counsel over defense strategy and made meaningful consultations impossible. Many of trial counsel's alleged inadequacies can be traced directly to the actions of Whitney.

■ We also note that Whitney has not affirmatively proved prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Due to the strength of the government's case, we doubt that in the absence of the alleged acts and omissions of trial counsel Whitney would have been acquitted. Whitney is therefore not entitled to a reversal on his ineffective assistance of counsel argument.

■ Finally, Whitney argues that the court erred in not granting his motion for a new trial based on the cumulative effect of all of the points previously discussed. "The grant or denial of a motion for a new trial is committed to the broad discretion of the district court, whose decision will not be reversed absent a clear abuse of discretion." *United States v. Offutt*, 736 F.2d 1199, 1202 (8th Cir.1984). *See also Vassar v. Solem*, 763 F.2d 975, 979 (8th Cir.1985). We do not feel that the points argued by Whitney, either individually or cumulatively, warrant a new trial.

Whitney raises, or attempts to raise, a number of other questions, none of which merits discussion here. It is sufficient to say that we have considered all of them and conclude that Whitney's conviction in all respects should be, and it is, affirmed.