**Eddie James WILLIAMS,**
**Petitioner-Appellant,**

v.

**John L. WELDON, Warden,**
**Respondent-Appellee.**

**Nos. 86–8135, 86–8136.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 8, 1987.

Suzanne Hashimi, Federal Defender Program, Inc., Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., State Law Dept., Atlanta, Ga., for respondent-appellee.

Before HILL and JOHNSON, Circuit Judges and HENLEY[*], Senior Circuit Judge.

HILL, Circuit Judge:

Appellant Eddie James Williams brings these consolidated habeas corpus appeals, pursuant to 28 U.S.C. § 2254, challenging his separate state court robbery convictions. Williams claims that the identification procedures employed by the police after his arrest were impermissibly suggestive. He further claims that the attorneys who represented him at his two trials each rendered ineffective assistance, both at the trial and appellate stages. Finally, Williams contends that the prosecutor's

---

[*] Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit sitting by designation.

statements during closing arguments in one of his trials rendered that trial fundamentally unfair. The district court adopted the magistrate's extensive recommendations and denied the writ in each case. Finding no error, we affirm.

## I. BACKGROUND.

The charges against Williams stem from a series of photo booth robberies which occurred in the Atlanta, Georgia area over a two-month period in the fall of 1977. The first two robberies occurred at the same Photomat booth in Clayton County, Georgia, operated each time by Carol Boronkas. Boronkas testified that at approximately 6:00 p.m. on October 14, a man in a green car pulled up to the window of the booth, pointed a gun at her, and told her to hand over all the money. Although the man was wearing a stocking mask over his head, she said that she thought he had a mustache, and the inflection of his voice sounded as though he might be black. One week later, on October 21, a man wearing the same stocking mask, having the same voice, and driving the same green car robbed the booth again. Boronkas testified that this time his mask was not completely pulled down, and she was able to see some dark curly hair as well as a patch of the man's skin, which she described as light black in color.

On October 31, a man driving a green car robbed a Picture Perfect photo booth in Clayton County operated by Betsy Collins. Collins described the man as Mexican in appearance, with dark hair and a mustache. This same booth was robbed again on November 7 by a man meeting the same description. Gayle Duke, the employee on duty that evening, described the robber as a dark-complexioned male, possibly Mexican, with black hair and a mustache, and driving a green car. On November 16, a man described as Puerto Rican in appearance and driving a green car robbed a Fox Photo booth operated by Gladys Sexton in Gwinnett County, Georgia. Approximately one week later, on November 22, a Fox Photo booth in Clayton County was robbed by a man driving a green car. Sandra

Jacobs, the employee on duty at that location, described the robber as having dark eyes, dark curly hair, a dark complexion, and being either Spanish, Cuban, or Mexican in race.

On November 28, a Photoland booth in Clayton County was the subject of an attempted robbery by a man driving a green Oldsmobile with a black vinyl top. The robber brandished what appeared to be a gun and instructed Frances Gladden, the booth employee, to put all the money in a bag. However, Michael Landers, Gladden's boyfriend who was also working at the booth, noticed that the robber was only holding a toy pistol and refused to give him any money. Gladden described the robber as having a light brown complexion, dark eyes, black hair, and a mustache. Later that evening, Officer Childers of the Clayton County Police Department noticed a vehicle and driver matching the description of the Photoland robber. The officer pulled over the car and arrested Williams, who was the driver and sole occupant. A search of the vehicle revealed a small toy pistol, a pullover knit cap, and several paper bags.

Two days after his arrest, Clayton County police placed Williams in a live lineup, attended by three of the victims. Sexton positively identified Williams as the individual who robbed her booth; Boronkas and Jacobs tentatively identified Williams. Police took a color photograph of the live lineup for the benefit of those witnesses unable to attend in person, and from this photograph Collins tentatively identified Williams as the person who robbed her. In addition to the color photograph of the lineup, police compiled a photo spread consisting of eight black and white mug shots. From this spread, Duke positively identified Williams as the man who robbed her. Immediately thereafter, Duke again positively identified Williams from the color photograph of the live lineup.

Several months later, Boronkas, Collins, Duke, and Jacobs attended a pretrial hearing on Williams' motion to sever. At this hearing Collins and Duke positively identified Williams as the individual who robbed

their booths. Boronkas and Jacobs stated, as before, that although Williams resembled the individual who robbed them, they could not positively identify him. At Williams' Clayton County trial, all the robbery victims identified Williams as the individual who had robbed or attempted to rob them, although Boronkas and Jacobs indicated some uncertainty in their identifications.

Williams presented an alibi defense at his Clayton County trial, claiming that he participated in a bowling league on the evenings which two of the robberies occurred. Defense counsel in that case admitted into evidence records of the bowling league, but failed to notice that the records were incorrectly dated. The prosecutor noticed the error and argued to the jury that the documents had been forged. The Clayton County jury subsequently found Williams guilty on all counts. At his Gwinnett County trial, Williams' counsel pursued a misidentification defense. This defense also failed, and that jury found him guilty of the Gwinnett robbery.

## II. IDENTIFICATION PROCEDURES

Williams first argues that the identification procedures employed by the Clayton County police were constitutionally defective. Williams asserts that the lineup was arranged in such a way as to leave the witnesses with little choice but to select him as the robber. He contends that his appearance was distinct because his clothes were dirty and his face was unshaven. Further, Williams claims that he was the only black person in the lineup.

■ This circuit has adopted a two-step analysis for determining whether identifications based on a lineup or photo array are so unreliable as to violate due process. We must first decide whether the original identification procedure was unduly suggestive. If not, that ends the inquiry. If so, however, we must then determine whether the suggestive procedure, given the totality of the circumstances, created a substantial risk of irreparable misidentification at trial. *Dobbs v. Kemp*, 790 F.2d 1499, 1506 (11th Cir.1986), *modified in part on other grounds*, 809 F.2d 750 (11th Cir.1987); *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. Unit A 1981),[1] *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982). Under this analysis, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

■ After conducting an evidentiary hearing, the magistrate concluded that none of the pretrial identification procedures in this case were impermissibly suggestive. Although Williams technically was the only black man in the lineup,[2] the other members of the group all had similar skin tone and facial characteristics. The group was similar in appearance to the generally consistent descriptions of the robber given by the various witnesses, *i.e.*, a Mexican, Puerto Rican, Hispanic, or light-complexioned black man. We agree with the magistrate's conclusion that simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features as the accused. *See United States v. Whitney*, 787 F.2d 457, 459 (8th Cir.1986) (photo display not overly suggestive even though defendant was the only light-complexioned black man in display); *United States v. Wilson*, 787 F.2d 375, 385 (8th Cir.) (absent differences in appearance tending to isolate accused's photo, identification procedure not unnecessarily subjective solely because display did not depict persons of same race

---

1. The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

2. Although the magistrate accepted as a fact that Williams was black, the record reveals that appellant's mother was black but his father was Puerto Rican.

or ethnic group), *cert. denied,* — U.S. ——, 107 S.Ct. 197, 93 L.Ed.2d 129 (1986).[3]

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Williams claims that both his Clayton County and Gwinnett County counsel rendered ineffective assistance, both at the trial and appellate stages. These claims are governed by the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, Williams must show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. at 2064–65. In addition, he must demonstrate actual prejudice, *i.e.,* a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 698, 104 S.Ct. at 2070. Regarding the specific claim of ineffective assistance of counsel on appeal, appellant must prove that he did not receive reasonably effective representation. *Funchess v. Wainwright,* 772 F.2d 683, 695 (11th Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986); *Alvord v. Wainwright,* 725 F.2d 1282, 1291 (11th Cir.), *cert. denied,* 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). The proper way to evaluate this question is to examine the alleged trial errors to see if they contain sufficient merit that appellate counsel can be faulted for not having raised them. *Funchess,* 772 F.2d at 695; *Alvord,* 725 F.2d at 1291.

### A. Clayton County Case

Williams contends that Larry King, his Clayton County counsel, failed to conduct an adequate pretrial investigation, in that he failed to contact potential alibi witnesses and failed to examine properly certain material evidence. King presented an alibi defense at trial, attempting to show that Williams was participating in an bowling league on the evenings which two of the robberies occurred. Williams complains,

however, that King did not interview all of his bowling team members, nor did he call any of the team members as witnesses. Williams asserts that King was deficient for relying solely upon the testimony of the bowling league secretary and for failing to examine adequately the bowling league records, which the prosecution discovered to be incorrect.

■ We agree with the magistrate that Williams has failed to show sufficient actual prejudice resulting from King's allegedly inadequate pretrial investigation. Neither the testimony of his bowling team members nor the properly-dated league records is such convincing evidence as to suggest a reasonable probability that, had it been presented, the result of the trial would have been different. Williams does not claim that he was bowling during the actual times of the robberies; the thrust of his defense was that he was bowling shortly after the time the robberies had occurred, presumably indicating an emotional or physical state not consistent with that of someone who had just committed a robbery. Because Williams' bowling league story could not provide him with an alibi for the actual times of the robberies, he cannot demonstrate that he was prejudiced by his counsel's failure to subpoena his team members or to examine more carefully the league records.

Williams also asserts that his counsel was ineffective on appeal because King failed to challenge the pretrial identification procedures employed by the police. After examining the alleged error, however, we conclude that Williams cannot show actual prejudice as to this issue either. As discussed in part II, *supra,* we hold that the identification procedures were not impermissibly suggestive. Because the lineup procedures employed in this case were constitutional, we cannot fault counsel for not having challenged them on appeal. *Funchess,* 772 F.2d at 695; *Alvord,* 725 F.2d at 1291.

---

**3.** We also reject as meritless Williams' claims that the photographic identification procedures

employed in this case were impermissibly suggestive.

## B. Gwinnett County Case

Williams also claims that Macklyn Smith, his Gwinnett County counsel, provided inadequate representation at trial. Williams alleges that Smith conducted only a limited pretrial investigation before determining that his client was guilty, and that Smith evaluated the availability of various defenses based on his determination of Williams' guilt. Specifically, Williams claims that Smith refused to present an alibi defense and decided instead to pursue a misidentification defense based solely on his personal assessment of Williams' guilt.

■ We again must agree with the magistrate that Williams has shown no prejudice resulting from his allegations of ineffectiveness. Gladys Sexton, the employee on duty when the Gwinnett County Fox Photo booth was robbed on November 16, 1977, testified at trial that the robbery took place at approximately 4:55 p.m. Williams' potential alibi witness, Judy Lowery, testified at the habeas corpus hearing before the magistrate that she thought she could place Williams at her Clayton County apartment complex on November 16, 1977 at approximately 4:00 p.m., "give or take 20 minutes." The testimony of Williams' alleged alibi witness, therefore, is not inconsistent with his presence at the Gwinnett County photo booth at the time of the robbery. Because Williams' alibi does not account for his presence at the actual time of the robbery, he cannot show a reasonable probability that, had Smith presented this alibi defense, the result of the trial would have been different.[4]

Williams also contends that Smith provided inadequate representation on appeal because he failed properly to raise and preserve objections to the live lineup conducted after his arrest on the Clayton County charges. We reject this argument, however, for the same reasons we discussed regarding Williams' similar claim in his Clayton County case. The identification procedures were not impermissibly sugges-tive; therefore, Smith cannot be considered ineffective for not having raised that issue on appeal.

## IV. PROSECUTOR'S CLOSING ARGUMENT

Finally, Williams complains of allegedly unfair statements made by the prosecutor during closing arguments in his Clayton County trial. To prevail on this claim, Williams must show that the remarks resulted in a trial so fundamentally unfair as to deny him due process. *Donnelly v. De-Christoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). Such a determination depends on whether there is a reasonably probability that, in the absence of the improper remarks, the outcome of the trial would have been different. *Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir.1985) (en banc) (citations omitted), *cert. denied*, —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

■ In his closing argument to the jury, and without objection from defense counsel, the prosecutor stated:

> Now, you see his wife came in here and said she divorced him for personal reasons. That had nothing whatsoever to do with him being charged with these robberies. [pause] But you and I know the real reason, don't we? ... If you find this man not guilty, you might as well lock up your wives, lock up your children, don't let them go around any Photomat store because he's going to be standing there waiting to rob them.

Williams contends that by this argument the prosecutor improperly injected his own opinion into the case, and attempted to frighten the jury into rendering a decision which reflected their fear rather than their commitment that the prosecutor had proved the defendant's guilt beyond a reasonable doubt. We conclude that the magistrate correctly rejected this claim. While the prosecutor's remarks in this case may not have been a model of desired prosecuto-

---

**4.** Moreover, the record reveals that Smith in fact rendered valuable assistance at trial. Smith successfully showed that the gun Williams allegedly used in the robbery was only a toy gun, thereby reducing the charge against him from armed robbery to robbery by intimidation.

rial conduct, they were not so egregious as to render Williams' entire trial fundamentally unfair. We simply are not persuaded that, in the absence of these alleged improper statements, the outcome of the trial would have been different.

Williams has failed to show any grounds which would merit habeas corpus relief. For the foregoing reasons, the decision of the district court denying the writ is

AFFIRMED.