**[DO NOT PUBLISH]**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 29, 2005
THOMAS K. KAHN
CLERK

**No. 05-10506**
**Non-Argument Calendar**
_____

D. C. Docket No. 03-20882-CR-PAS

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

                              versus

CHARGOIS RAMON ANDERSON,

                                                    Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the Southern District of Florida**
_____

**(November 29, 2005)**

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Chargois Ramon Anderson appeals his convictions and sentence for (1) conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a); (2) interfering with commerce by robbery, in violation of § 1951(a); (3) carjacking, in violation of 18 U.S.C. § 2119; and (4) using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). We affirm his convictions and sentence.

## I. BACKGROUND

Prior to trial, Anderson filed a motion to suppress identification testimony, arguing a 26-person photographic lineup, from which Reynaldo Fernandez identified him, was extremely suggestive, such that the likelihood of misidentification was high because his picture was placed in a "prominent position" and was "more prominent" than the other pictures. The district court denied Anderson's motion.

At the trial, Fernandez identified Anderson as one of the two men who had robbed him. Another victim, Reider Espinosa, initially could not identify the perpetrator in the courtroom. He was then shown a copy of the photographic lineup from which he previously identified Anderson, and acknowledged that, at the time he picked out a photograph of the perpetrator, but could not identify the perpetrator in the courtroom that day. A short period after Anderson was discreetly

2

asked by his attorney to remove his glasses, over Anderson's objection, the

following exchange took place:

| | |
|---|---|
| Government: | When you're looking at this picture can you see the person that you identified as robbing you that day in the courtroom? |
| Espinosa: | There is a gentleman that looks like him. |
| Government: | Where is that gentleman seated? |
| Espinosa: | In front of me. |
| Government: | Could you please point that person out and describe something that [he is] wearing? |
| Espinosa: | He has a white shirt with a tie. |
| Government: | Can the record please reflect that the witness identif[ied] the Defendant? |
| Court: | He has pointed out the Defendant . . . |
| Government: | How is the person['s] appearance . . . today different than the person [who] you pointed out in the picture? |
| Espinosa: | The hair. Because of the time that has gone by . . . |

Upon being convicted, Anderson was sentenced under an advisory

Guidelines scheme, after the Supreme Court's decision in *United States v.*

*Booker*, 125 S. Ct. 738 (2005).

On appeal, Anderson argues the district court should have granted his

motion to suppress Fernandez's identification testimony and subsequent in-court

identification of Anderson. According to Anderson, the 26-person photo array,

from which Fernandez identified Anderson, was unduly suggestive since:

(1) Anderson's photo was in a prominent position as the first photograph; (2) his

3

photo stood out from the others, since he was the only man pictured with short dread locks, and at least 7 of the men were 15 to 20 years older than Anderson; and (3) the men depicted did not have uniform skin color. Next, Anderson asserts the procedure surrounding Espinosa's in-court identification violated due process because, by the third time Espinosa was asked to identify the perpetrator, "it was clear that Anderson was the defendant," making the in-court identification "tantamount to a police show-up," in which police officers confront a witness with a single suspect and ask for an identification. Anderson notes that even when Espinosa finally identified Anderson it was "somewhat tentative." Finally, Anderson contends the retroactive application of *Booker* to his sentence violated due process and *ex post facto* principles because when he allegedly committed the instant offenses in 2003, under a correct interpretation of the Sixth Amendment, he could be sentenced only based on facts proven to a jury. He contends because after *Booker*, the court was free to impose a sentence above the advisory Guidelines maximum, the application of *Booker* increased his punishment retroactively. Anderson concedes, however, in *United States v. Duncan*, 400 F.3d 1297, 1306–07 (11th Cir. 2005), *cert. denied* __ S. Ct. __, 2005 WL 2493971 (Oct. 11, 2005), we rejected such an *ex post facto* argument.

4

## II. DISCUSSION

A. *Motion to Suppress*

In considering a district court's denial of a defendant's motion to suppress, we review the district court's findings of fact for clear error and its application of the law to those facts de novo. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000). In assessing the constitutionality of the district court's decision to admit an out-of-court identification, we first "must determine whether the original identification procedure was unduly suggestive." *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). If we find the procedure was suggestive, "we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable." *Id.* We will "construe the facts in the light most favorable to the prevailing party." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).

Construing the facts most favorably to the Government, the district court did not clearly err by finding the photo spread was not unduly suggestive. The photo array itself depicts 26 men, of differing ages and hairstyles, all of whom appear to be of African-American descent. All of the photographs are roughly the same size, with backgrounds that are either white or off-white. Under each photo is the man's name and date of birth, all in the same font and size. Anderson's picture is in the

5

top, left-hand corner, but, as the magistrate found, there is nothing about it that causes it to stand out from the others, and Anderson fails to explain why this particular positioning was "prominent." Indeed, the evidence suggests Anderson's photo was placed at that particular position because his name came first alphabetically, not because the Government wanted to call attention to it. There is no evidence the police knew Anderson was the suspect they were looking for regarding the May 2, 2003, robbery when Fernandez identified him.

Although Anderson claims he is the only person depicted with short dread locks, three other photos depict men with fairly short dread locks, and several pictures depict men with hair similar to Anderson's hair in his picture. Moreover, although the men pictured do not have uniform skin color, they do seem to be racially similar, and we have held, "simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where . . . the other individuals in the lineup had roughly the same characteristics and features as the accused." *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987) (habeas context). Although there are some men pictured who are older than Anderson, nine are roughly his age, and six are younger. Thus, the district court did not clearly err when it determined the photo

array was not unduly suggestive on its face, and we need not proceed to the second step to determine whether the identification was unreliable.

B.  *In-Court Identification*

We review constitutional challenges de novo.  *United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir. 2005), *petition for cert. filed*, No. 05-5047 (June 21, 2005).  The Supreme Court has held "the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law."  *Foster v. California*, 89 S. Ct. 1127, 1128 (1969).  In *Foster*, the witness was asked to identify the perpetrator out of three people in a lineup, where the perpetrator was five or six inches taller than the other two people and was wearing clothing similar to that worn by the perpetrator.  *Id.* at 1128.  After the witness initially could not positively identify the perpetrator, he was allowed to speak to the perpetrator, one-on-one.  Even after this conversation, he was unable to be sure about his identification, but, about a week later, at a second lineup, where the perpetrator was the only person who also had appeared in the first lineup, the witness positively identified the perpetrator.  *Id.*  The Supreme Court held the procedure in *Foster* essentially said to the witness, "this is the man," and thus violated due process.  *Id.* at 1129.  We have found reversible error where the prosecutor, among other things, pointed to the defendant when eliciting

identification testimony from a witness and verbally aided the witness in making

his identification. *United States v. Warf*, 529 F.2d 1170, 1172–74 (5th Cir. 1976).[1]

The in-court identification was not unduly suggestive. Unlike the pre-trial

identification procedure that was at issue in *Foster*, this was not a situation where

Espinosa was asked to identify Anderson out of a lineup where it was obvious the

Government wanted him to choose Anderson. *See Foster*, 89 S. Ct. at 1128.

Moreover, the Government's actions cannot fairly be construed as a "show-up"

because: (1) there is no evidence the prosecutor verbally, or physically, suggested

to Espinosa whom to identify; and (2) after Espinosa initially indicated he could

not identify the robber, each time the prosecutor asked Espinosa again, he had a

reason to believe Espinosa's answer might be different since Espinosa had been

refreshed with his previous identification and had a chance to see Anderson

without his glasses. There is no evidence the Government's procedure was

designed to suggest to Espinosa whom to identify, but, instead, the record shows

the prosecutor and the court were careful not to call Espinosa's attention to the fact

Anderson had removed his glasses. Moreover, Espinosa's final in-court

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

identification of Anderson was tentative, which Anderson's counsel utilized on cross-examination and during his closing statements.

Even assuming the in-court identification procedure was unduly suggestive, it was harmless error in light of the other, more reliable identification Espinosa had made previously, Lieutenant Croughwell's separate in-court identification of Anderson, and the overwhelming evidence of Anderson's guilt. First, the undisputed evidence shows Espinosa made a prior identification of Anderson, less than a month after the incident, which was more reliable than his in-court identification since it was closer in time to the incident. Furthermore, Lieutenant Croughwell, another eyewitness, made an in-court identification of Anderson, which Anderson does not dispute, after Anderson removed his glasses. Finally, even notwithstanding the identifications, substantial evidence supports Anderson's convictions as to these counts, as it shows Anderson jumped out of a Damien truck as it was fleeing from the police, on the same day, and in the same area, as the robbery and carjacking occurred. Thus, the district court did not err by admitting Espinosa's in-court identification.

C. *Retroactive Application of* Booker

We review de novo a defendant's claim his sentence violated *ex post facto* principles. *United States v. Abraham*, 386 F.3d 1033, 1037 (11th Cir. 2004), *cert.*

9

*denied*, __ S. Ct. __, 2005 WL 2493873 (Oct. 11, 2005). In *Booker*, the Supreme Court held the mandatory nature of the Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. *Booker*, 125 S. Ct. at 749–51. In a second and separate majority opinion, the Court concluded the appropriate remedy was to render the Sentencing Guidelines effectively advisory. *Id.* at 764. The Court stated both its "Sixth Amendment holding and . . . remedial interpretation of the Sentencing Act" must be applied to "all cases on direct review." *Id.* at 769. In *Duncan*, we determined due process is not violated by the retroactive application of *Booker*'s remedy since the defendant had "warning at the time he committed his crime that life imprisonment was a potential consequence of his actions." *Duncan*, 400 F.3d at 1307. At the time Anderson committed the offenses he had ample warning, based on the maximum statutory sentences set out in the U.S. Code, that a total 272-month sentence was a possible consequence of his actions, and therefore, there are no *ex post facto* or due process violations implicated in this case. *See id.*

## III. CONCLUSION

The district court did not clearly err by denying Anderson's motion to suppress the identification testimony. Additionally, the in-court identification

procedure did not violate Anderson's due process rights, and no due process or *ex post facto* violations occurred at sentencing.

**AFFIRMED.**