Peter Brian CIKORA,
Petitioner–Appellant,

v.

Richard L. DUGGER,
Respondent–Appellee.

No. 87–5360.

United States Court of Appeals,
Eleventh Circuit.

March 25, 1988.

Ira N. Loewy, Bierman, Sonnett, Shohat & Sale, P.A., Pamela Perry, Miami, Fla., for petitioner-appellant.

Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ESCHBACH [*], Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Peter Brian Cikora challenges his state conviction for grand theft and burglary with a weapon. In his federal habeas petition, Cikora claims that the state trial court violated his constitutional rights (1) when it admitted evidence of an out-of-court identification allegedly based on an impermissibly suggestive photo array, and (2) when it refused to allow Cikora to present one Charles Donorvitch to the jury to show that Donorvitch closely fit the description of the burglar given by witnesses immediately after the crime.

I.

On the night of August 12, 1982, Karen Hudson and her daughter Bobbie Lynn Hudson were staying at the Hollywood, Florida home of Janie Hernandez. At about 10:00 p.m., Hernandez heard a knock

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

at the door. She did not open the door; instead she looked through a blue stained-glass "jailhouse door." A man outside, bending over as if in pain, asked to use the telephone, but Hernandez refused.

At about 1:00 a.m., Karen Hudson was awakened by barking dogs. The three women got up and looked around, but they could not see anything. An hour later, Karen Hudson looked out the living room window and saw a man on the ground on his hands and knees. Although the man had a stocking over his face, Hudson was able to observe that he had light brown hair and dark eyes. The police were called, but they found nothing.

At 6:30 a.m., the three women heard a loud noise at the front door. Karen Hudson looked out her bedroom window and saw a man hitting the door, about four to five feet away. In the five seconds in which Hudson was able to observe the man, she noticed that he had light brown hair and dark eyes. His face was not covered.

Karen Hudson ran to phone the police and to get Hernandez, who tried to hold the door. The man soon shred the door, however, and entered the house. Hernandez hid; Karen Hudson dropped the telephone and ran down the hallway. The man chased her, and she turned around to face him. He yelled at her before hitting her over the head and across the face. When Bobbie Lynn Hudson called at him to stop, he ran out of the house.

Karen Hudson then phoned the police. As she picked up the telephone, she saw the man get into Hernandez' car; she screamed at him, and he turned towards her before stepping into the car. Hernandez ran across the street to her neighbor's house. From the neighbor's doorway, Hernandez saw the man try to unlock her car. She was able to observe him for four minutes, although she was seventy-five feet away and admitted that it was difficult for her to see at the time.

Following the incident, Deputy Cloud of the Broward County Sheriff's Office arrived at the Hernandez house. After speaking with Hernandez and Karen Hudson, Cloud put together a composite description of the intruder: a white male in his mid-twenties, approximately 5'7" tall, 165 pounds, with short to medium light brown hair. Hernandez and Hudson had not observed any facial hair, scars, marks, or tattoos. Cloud then learned from a neighborhood resident that Cikora fit the composite description and lived in the neighborhood. Cloud telephoned Cikora, who came over. According to Cloud's testimony, Cikora at the time had a full blond or sun-bleached moustache that could have blended into his face.

Deputy Sheriff Edward Baker then took over the case. Baker secured a photograph of Cikora from the Sheriff's Office and put this photograph together with five others to produce a photographic lineup. All of the photos showed white males; four showed men with full moustaches, one showed a man with a goatee and sparse moustache, and the photo of Cikora showed only a sparse moustache. Only Cikora's photo had height markings.

One month after the burglary, Officer Baker asked the three women to examine the photographic lineup. Baker asked Hernandez and Bobbie Lynn Hudson to turn away while he showed the array to Karen Hudson. Baker stated, "These are pictures of six white males. One of them is believed to be the suspect. I would like you to view them and pick out who you feel is the white male that was at your residence on this particular night." Karen Hudson pointed to the picture of Cikora. Baker then followed the same procedure with Hernandez, who also pointed to the photograph of Cikora, although she indicated that she was not one hundred percent certain of her identification. Bobbie Lynn Hudson was unable to identify Cikora. None of the women communicated during the selection process, and Officer Baker did not indicate any woman's selection to the others. Prior to trial, defense counsel moved to suppress the out-of-court identification on the ground that the photo array was impermissibly suggestive. The court denied this motion.

At trial, Karen Hudson and Hernandez positively identified Cikora as the man who broke into the Hernandez home. Officer Baker testified as to each woman's out-of-court identification. Five witnesses testified for the defense. John Gaetz testified that he was friendly with both Hernandez and Cikora, and that he had seen Hernandez and Cikora together before the night of the crime. Four defense witnesses testified that the photograph of Cikora used in the photographic lineup had been taken a considerable time before the burglary. Cikora testified that he had been shooting pool until 2:30 a.m. on the night of the burglary and then went home. He also exhibited tattoos on his back, chest, and arm.

As part of the defense strategy, counsel subpoenaed Charles Donorvitch, a prisoner that Cikora had met in the Pompano, Florida jail. Counsel argued that, as Donorvitch lived in Hernandez' neighborhood and fit the description of the burglar given by the witnesses to Detective Cloud, he should be brought into court for the jury to observe.[1] The trial judge expressed concern about parading Donorvitch before the jury, although he suggested that calling Donorvitch as a witness might be a different matter. The state moved to exclude Donorvitch, and the trial court granted the motion.

Cikora was convicted and sentenced to concurrent prison terms of fifteen years and five years. The Florida District Court of Appeal affirmed the conviction, 450 So. 2d 351. Cikora then filed his petition for habeas corpus in federal district court. The Magistrate recommended that the writ issue on the ground that the photographic lineup was impermissibly suggestive. The district judge concluded, however, that Cikora's rights were not violated by either the admission of the identification based on the photo lineup or the exclusion of Donorvitch, and denied relief, 661 F.Supp. 813.

## II.

◼ This court consistently has followed a two-step analysis in assessing the constitutionality of a trial court's decision to admit out-of-court identifications. First, we must determine whether the original identification procedure was unduly suggestive. *Dobbs v. Kemp,* 790 F.2d 1499, 1506 (11th Cir.1986), *modified in part on other grounds,* 809 F.2d 750 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987). If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable. *See Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Dobbs,* 790 F.2d at 1506. This second stage involves consideration of five factors identified by the Supreme Court in *Neil v. Biggers:* opportunity to view, degree of attention, accuracy of the description, level of certainty, and length of time between the crime and the identification. 409 U.S. at 199, 93 S.Ct. at 382.

Initially we must address our standard of review of the district court's conclusion that the identification procedure was not impermissibly suggestive. The district court's *ultimate* conclusion, taking into consideration the five factors of the *Neil v. Biggers* test, that Cikora was not deprived of due process by the admission of the out-of-court identification, is subject to plenary review as a mixed question of fact and law. *Cf. Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) (per curiam) (ultimate conclusion of whether admission of identification testimony deprived defendant of due process is mixed question of fact and law to which presumption of correctness on habeas proceedings does not apply). But as previously explained, this ultimate conclusion must be preceded by several intermediate determinations. If we conclude that the photo array was not impermissibly suggestive,

---

1. Cikora's attorney originally intended to have Donorvitch testify, but Donorvitch's attorney asserted his client's privilege against self-incrimination. Cikora's attorney then sought merely to have the jury view Donorvitch to compare his appearance with Cikora's and with the description given to the police by Hernandez and Karen Hudson.

we need not proceed to the five factors of the *Neil v. Biggers* test.

Although we have found no Supreme Court or Eleventh Circuit decisions directly on point, the former Fifth Circuit consistently applied the "clearly erroneous" standard, on habeas proceedings as well as on direct appeals, to conclusions of the district courts that a pretrial identification procedure was not impermissibly suggestive. *See, e.g., Doescher v. Estelle,* 616 F.2d 205, 206 (5th Cir.1980); *United States v. Diecidue,* 603 F.2d 535, 565 (5th Cir.1979), *cert. denied,* 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980); *United States v. Francoeur,* 547 F.2d 891, 894 (5th Cir.), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977); *cf. United States v. Merkt,* 794 F.2d 950, 958 (5th Cir.1986) (citing *Diecidue* ), *cert. denied,* —— U.S. ——, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).[2] Nor do we view the Supreme Court's decision in *Sumner v. Mata* as implicitly overruling our use of the "clearly erroneous" standard. In *Mata,* the Court confirmed that "the ultimate question as to the constitutionality of the pretrial identification procedures is a mixed question of law and fact." 455 U.S. at 597, 102 S.Ct. at 1306. The Court also explained, however, that "the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption [of correctness applied to state court findings of fact by 28 U.S.C. § 2254(d) ]." *Id.* It is clear from a previous opinion of the Supreme Court, as well as our own two-step analysis of identification procedures, that the "ultimate question" of constitutionality refers not to the suggestiveness of the procedures *per se* but rather to the final conclusion about the reliability of the identifications, as measured by the totality of the circumstances, including any impermissible suggestions. "Unlike a warrantless search, a suggestive preindictment identification procedure does not *in itself* intrude upon a constitutionally protected interest. Thus, considerations urging the exclusion of evidence deriving from a constitutional violation do not bear on the instant problem." *Manson v. Brathwaite,* 432 U.S. 98, 113 n. 13, 97 S.Ct. 2243, 2252 n. 13, 53 L.Ed.2d 140 (1977) (emphasis added); *accord United States ex rel. Kirby v. Sturges,* 510 F.2d 397, 406 (7th Cir.) (Stevens, J.), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975).

■ We cannot conclude that the district court was clearly erroneous when it held that the pretrial identification procedure was not impermissibly suggestive. First, we do not agree that the height markings in Cikora's photograph waved a red flag in front of Hernandez and Hudson. Based upon our examination of the photo array, we doubt that anyone viewing the array would not realize that at least three, and possibly all, of the other five photographs were also "mug shots." Second, Officer Baker did not direct the women's attention

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981. Under the strict rule of interpanel accord to which this circuit adheres, "a prior decision of the circuit (panel or en banc) [can] not be overturned by a panel but only by the court sitting en banc." *Id.* at 1209. We also must adhere to intervening Supreme Court cases that disapprove the law as developed by prior panels, but unlike Judge Clark we do not read the Supreme Court's opinion in *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), as requiring us to review de novo the district court's conclusion about the suggestiveness of a pretrial identification procedure. In *Miller,* the Supreme Court held that a state court's conclusion as to the voluntariness of a defendant's confession is not a factual resolution to which a presumption of correctness applies in federal habeas corpus proceedings. As the Supreme Court noted, however, "the voluntariness of a confession has always had a uniquely legal dimension." *Id.* at 453. *Cf. Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed. 2d 794 (1983) (per curiam) (state court's conclusion about defendant's competency to stand trial is factual issue to which presumption of correctness applies). Were we writing on a completely clean slate, we might agree with Judge Clark that the question of undue suggestiveness is analogous to that of voluntariness. But our slate is not unmarked, and in our view *Miller* did not erase what was written there before this case.

We recognize that our circuit's adherence to the "clearly erroneous" standard on this issue conflicts with the Ninth Circuit's practice of employing de novo review. *See United States v. Johnson,* 820 F.2d 1065, 1072 (9th Cir.1987).

to Cikora's photograph when he told them that one of the men pictured was the suspect. In fact, Baker was careful enough to ask the two other women to turn their backs during each identification procedure.

Third, we reject Cikora's suggestion that the photo array was suggestive because three other photos show males of Hispanic background. Although the man pictured in one photo appears to be Hispanic, the others do not necessarily show Hispanic men. Moreover, "simply being of a different race or ethnic group from others placed in a lineup does not necessarily make that lineup impermissibly suggestive, especially where, as here, the other individuals in the lineup had roughly the same characteristics and features of the accused." *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987).

All the men depicted had some facial hair. Although Cikora's moustache in the picture is sparse, it is definitely noticeable. Indeed Cikora's moustache is not significantly less noticeable than that of one of the other men. *Cf. United States v. Shoels*, 685 F.2d 379, 385 (10th Cir.1982) (photo array of seven black men, all with noticeable but sparse facial hair, not impermissibly suggestive although witness described criminal as clean-shaven), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1370 (1983).[3] The photo array here is much less suggestive than the array in either *United States v. Gidley*, 527 F.2d 1345 (5th Cir.) (defendant was only person depicted with Asian appearance and long black hair), *cert. denied*, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976), or *United States v. Bice–Bey*, 701 F.2d 1086 (4th Cir.) (defendant was only woman pictured with dred locks), *cert. denied*, 464 U.S. 837, 104 S.Ct. 126, 78 L.Ed.2d 123 (1983). Because we conclude that the district court was not clearly erroneous in finding that the photo array was not impermissibly suggestive, we need not reach the five-factor *Neil v. Biggers* test.

### III.

Cikora also argues that the trial court's refusal to permit him to show Donorvitch to the jury deprived him of due process.[4] Cikora seeks support primarily from *United States v. Robinson*, 544 F.2d 110 (2d Cir.1976), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978). In *Robinson*, the Second Circuit held that a trial court erred in refusing to allow a defendant charged with bank robbery to introduce testimony by a corrections officer that a person in a bank surveillance picture taken during the robbery resembled Eli Turner, another man whom the police suspected of committing two other armed robberies in the area. The Second Circuit reversed

---

3. Although the photocopy of the photo array on the record is blurred, it is possible that a person looking at the photo array would believe that Cikora had a slight beard.

4. Cikora bases this claim on the due process clause itself and on the compulsory process clause of the sixth amendment (as incorporated by the fourteenth amendment), which provides that "[i]n all criminal proceedings, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." The Supreme Court apparently has never decided whether the compulsory process clause applies to the introduction of real evidence, such as Donorvitch himself, as well as to testimonial evidence. Assuming that the sixth amendment is applicable, however, we believe that the standards for assessing the sixth amendment violation and a violation of due process itself are identical in this context—a challenge to a trial court ruling excluding evidence or testimony. The Supreme Court recently confirmed the close relationship of the compulsory process clause and the due process clause on the issue of exclusion of testimony, *see Rock v. Arkansas*, — U.S. —, 107 S.Ct. 2704, 2710–11, 97 L.Ed. 2d 37 (1987); *Pennsylvania v. Ritchie*, — U.S. —, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987), and it previously noted that it had "borrowed much of our reasoning with respect to the Compulsory Process Clause of the Sixth Amendment from cases involving the Due Process Clause of the Fifth Amendment." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). In cases where this court has considered the effect of the exclusion of testimony on due process, we have held consistently that the exclusion must rise to a denial of fundamental fairness before habeas relief can be granted. *See Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir.1987); *Martin v. Wainwright*, 770 F.2d 918, 938 (11th Cir.1985), *modified in part on other grounds*, 781 F.2d 185 (11th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.1983) (per curiam).

even though there was no evidence linking Turner to the robbery for which Robinson was on trial. *Robinson*, however, is not a habeas case, and the decision in *Robinson* rests on a construction of the rules of evidence, not the due process clause of the Constitution.

Federal courts have granted relief from state convictions when the trial court arbitrarily excluded evidence tending to show that another person might have committed the crime. They have done so, however, only when there was some demonstration connecting another person to the particular crime for which the defendant was on trial. In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the seminal case in this field, the Supreme Court reversed a conviction after a trial in which the state trial court had refused to allow the testimony of the defendant's accomplice. That testimony would have shown that the accessory, not the defendant, had fired the fatal shot. *Id.* at 16, 87 S.Ct. at 1921. Similarly, the Supreme Court held in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), that a state trial court denied Chambers due process when it refused to allow Chambers to show to the jury that another person had repeatedly confessed to the crime. The state trial judge excluded this testimony because Chambers had called that person as his witness, and Mississippi rules of evidence did not permit defendants to cross-examine their own witnesses. *Id.* at 293–94, 93 S.Ct. at 1044–45.

In *Pettijohn v. Hall*, 599 F.2d 476 (1st Cir.), *cert. denied*, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979), the First Circuit granted habeas relief because the state trial court had refused to allow the defendant to introduce the testimony of an eyewitness

that he had *actually identified* a person other than the defendant as the criminal from a photo array. By contrast, in *Perry v. Rushen*, 713 F.2d 1447 (9th Cir.1983), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984), the Ninth Circuit held that due process had not been violated in Perry's rape trial when Perry was prevented from introducing the testimony of two witnesses that they had been raped in the same area and time-frame by another man who might have been confused with Perry. A California evidentiary rule precluded evidence tending to show that a third person might have committed the crime unless the defendant also introduced evidence tending to " 'connect that person with the actual commission of the offense.' " *Id.* at 1449 (quoting *People v. Green*, 27 Cal.3d 1, 22, 164 Cal.Rptr. 1, 609 P.2d 468 (1980)). Perry was unable to make any showing that linked the other man to the crime for which he was being tried.

■ As the Ninth Circuit explained in *Perry*, determining what due process mandates in these cases requires a balancing of interests. The defendant certainly has a strong interest in presenting exculpatory evidence, but the state has an interest in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party. Due process may require a trial court to allow the introduction of evidence of another party's possible guilt when there is some showing of a nexus between the other party and the particular crime with which a defendant is charged.[5] Cikora has made no such showing.[6]

Accordingly, the order of the district court denying the writ of habeas corpus is AFFIRMED.

---

**5.** There may be other legitimate state interests or personal privileges warranting the exclusion of such evidence, and we are not asked to address the existence or scope of any such interests in this case.

**6.** Cikora's counsel stated only that "[Donorvitch] lives in that neighborhood. He fits the description given to the police to the T, much more so than Peter Cikora."

The prosecution was not unalterably opposed to any defense use of Donorvitch's appearance. The state objected to the introduction of Donorvitch's testimony or body into evidence on the ground of surprise. The prosecutor stated that "[i]t should have and could have been taken care of in a pre-trial manner or we even could have had Mr. Cikora and Mr. Donorvitch in the audience, and if [Hernandez and Hudson] couldn't pick him out, it would go to the credibility of the defense's viewpoint of the case."

CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance of the district court's denial of Cikora's petition for a writ of habeas corpus. I dissent from the majority's holding as to our "standard of review of the district court's conclusion that the identification procedure was not impermissively suggestive," *see supra* part II. The majority adopts the "clearly erroneous" standard. I can only assume that the majority in using that phrase has in mind the standard set forth in Fed.R.Civ.P. 52(a), which states in part: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In my view, Rule 52(a) has no application in this 28 U.S.C. § 2254 proceeding. I disagree that the issue of an identification procedure's suggestiveness is a question of fact. Thus, our review of this case is neither a Rule 52(a) or a 28 U.S.C. § 2254(d) review. In *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), the Supreme Court set forth several principles to guide the federal courts in distinguishing questions of fact from those of law. An issue is more appropriately deemed legal "[w]here, for example, as with proof of malice in First–Amendment libel cases, the relevant legal principle can be given meaning only through its application to the particular circumstances of a case," *id.* at 452, or where there are " 'perceived shortcomings of the trier of fact by way of bias or some other factor.' " *Id.* (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 518, 104 S.Ct. 1949, 1969, 80 L.Ed.2d 502 (1984) (Rehnquist, J., dissenting)). An issue is more appropriately deemed factual "[w]hen, for

example, the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor." [1] *Id.*

Under these principles, the suggestiveness question would seem to be a legal issue, or at the very least, a mixed question of law and fact, which, like a purely legal issue, is freely reviewable. It can certainly be said that the suggestiveness concept can be "given meaning only through its application to the particular circumstances of a case"; one need only look at the fact-laden analyses of the courts that have decided the suggestiveness question. *See, e.g., Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Additionally, the suggestiveness question is *not* one that turns on evaluations of demeanor and/or the credibility of witnesses. The facts underlying the decision are virtually never in dispute, and it is not as though the relevant witnesses ever speak to the ultimate issue, as is the case, for example, when a defendant's competence or a juror's bias is at issue.[2]

Additionally, none of the Supreme Court cases dealing with due process challenges based on identification procedures treats the suggestiveness question as one of fact; to the extent they indicate anything, they imply that the issue is one of law. First, from the earliest cases, the Court has referred to the following "standard" or "test": whether an identification procedure is "so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *See, e.g., Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers*, 409 U.S. at 198, 93 S.Ct. at 381. Second, in *Neil v. Biggers*, the district court had

---

1. In addition to setting forth these principles, the *Miller* Court stated that "an issue does not lose its factual character because its resolution is dispositive of the ultimate constitutional question." 106 S.Ct. at 451. Because of this language, I have trouble accepting the majority's use of the converse—namely, that the suggestiveness issue is a factual question because it is *not* dispositive of the ultimate constitutional question.

2. The Supreme Court has determined that questions of a defendant's competence or a juror's bias are fact questions subject to clear error review and the presumption of correctness. *See Maggio v. Fulford*, 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983) (competence); *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984) (juror bias).

found that the lineup was impermissibly suggestive without addressing its reliability, the Sixth Circuit affirmed, and the Supreme Court reversed, ruling that an independent determination of reliability was necessary. The majority and dissent clashed over whether the reversal amounted to a failure to abide by the rule that when the two courts below have concurred in their findings of fact, the Court should not upset those findings. The majority wrote that the rule was "inapplicable here where the dispute between the parties is not so much over the elemental facts as over the constitutional significance to be attached to them." *Id.* at 193 n. 3, 93 S.Ct. at 379 n. 3.

Finally, in *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1987)—the only identification case addressing the standard of review directly—the Court seemed to deliberately sidestep the issue of the standard of review to be accorded the second-tier questions, i.e., suggestiveness and reliability. In reversing the Ninth Circuit for its failure to accord the state court's fact findings the presumption of correctness mandated by section 2254(d), the Court did not really specify which tier of findings the Court of Appeals had mistreated. The Court did, however, offer clues:

> We agree with the Court of Appeals that the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by § 2254(d). In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the *legal standard.* But the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption as our earlier opinion made clear. Thus, *whether the witness in this case had an opportunity to observe the crime or were too distracted; whether the witnesses gave a detailed, accurate description; and whether the witnesses were under pressure from prison officials or others are*

> *all questions of fact to which the statutory presumption applies.*

*Id.* at 597, 102 S.Ct. at 1306–07 (emphasis added). Elsewhere in the opinion, the Court states that on the case's first appearance before it, "We expressed no view as to whether the procedures had been impermissibly suggestive. That was a question for the Court of Appeals to decide in the first instance *after* complying with § 2254(d)." *Id.* at 596, 102 S.Ct. at 1306. These statements taken together indicate that the suggestiveness determination is at least in part a legal conclusion. The "facts" referred to in the long quoted passage are historical, verifiable events. *See Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir.1985) (" '[f]actual issues include basic, primary, or historical facts,' such as external events and credibility determinations") (quoting *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963)). Moreover, the Court's instruction to reach the suggestiveness determination *after* according the facts their presumption of correctness implies that the *determination* is not accorded such a presumption, i.e., is not a factual issue.

For these reasons, I respectfully dissent from the majority's holding that the suggestiveness question is subject to clear error analysis. I concur, however, in the majority's decision on the merits. The case is a troubling one because the only evidence connecting the defendant to the burglary was the identification by two witnesses under circumstances that raise grave doubts as to the suggestiveness of the procedure. I see no error of law, however, in the district court's conclusion that when the identifications are viewed in their totality, there are sufficient indicia of reliability to negate a violation of due process. Because these indicia of reliability represent limitations on a federal court's review of a state conviction, I join the majority in affirming the district court's judgment.