[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13094
Non-Argument Calendar

_____

D. C. Docket No. 03-00052-CR-1-MMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EARL JEFFERY BARBER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 9, 2005)

Before HULL, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Earl Jeffery Barber appeals his convictions and sentences for possession of a

firearm by a convicted felon, in violation of 18 U.S.C. sections 922(g)(1) and

924(e)(1), and possession of stolen firearms, in violation of 18 U.S.C. sections 922(j) and 924(a)(2). Barber argues that the district court erred when it denied a motion to suppress a photographic lineup identification and when it applied an obstruction of justice enhancement. Barber also contends for the first time on appeal that the district court violated his Sixth Amendment rights when it applied the obstruction of justice enhancement based on facts that were neither charged in his indictment nor proven to a jury. We reject each argument and affirm Barber's convictions and sentences.

## I. BACKGROUND

The charges against Barber arose from an investigation of the burglary of the home of Katherine Hayes and the theft of her jewelry, collector's coins, and firearms. Before trial, Barber filed a motion to suppress the identification of him by an eyewitness, Katherine Hayes, and her eleven year old son, John Hayes, through a photographic lineup. Barber argued that the photographic array was unduly suggestive because he was the only individual with hair color that matched the description of the eyewitnesses. Barber also argued that the identification procedure was tainted because, when John Hayes was shown the photographic lineup, Barber's photograph was marked with Katherine Hayes's initials.

The district court held a hearing on the motion to suppress, and the

2

government presented the testimony of Katherine Hayes, John Hayes, and the detective who conducted the photographic lineup. The district court denied the motion to suppress and explained that "nothing about the manner in which the photographic array was prepared, or presented, was unduly suggestive" and that "each witness, independent of each other and in a separate proceeding, in fact identified the defendant . . . and that it was only after each had made their own independent identification that they placed their initials upon the photo array."

A jury found Barber guilty on both counts. At the sentencing hearing, Barber stated that he accepted and had no objections to the facts and recommendations in the presentence investigation report. The government objected because the probation office did not recommend an enhancement for obstruction of justice. Special Agent Michael Mitchell testified in support of the enhancement. He testified that Barber's co-defendant, Anthony Boyd, who turned himself into police the day after the burglary, told authorities that Barber instructed Boyd not to implicate Barber. Agent Mitchell also testified that in phone calls made from prison, Barber told his mother, sister, and wife to make sure that Boyd maintained his story and not "lie on him." Barber also made a phone call to Boyd about Boyd's testimony in front of the grand jury. Portions of the recorded phone calls were played for the court.

3

The district court sustained the government's objection and found that Barber "concocted the story so as to hide the truth of the fact that he was . . . involved in the burglaries. He maintained that posture through the tapes I heard by telling others to find certain testimony." The court applied the enhancement and sentenced Barber to 327 months' imprisonment for Count 1 and 120 months' imprisonment for Count 2, to run concurrently.

## II. DISCUSSION

Barber makes three arguments on appeal. Barber first argues that the district court erred when it denied his motion to suppress the photograph lineup identification by the two eyewitnesses to the burglary. Second, he contends that the district court erred when it applied the obstruction of justice enhancement, because the government failed to present reliable and specific evidence to support the enhancement and instead relied on the trial testimony of Barber's co-defendant. Finally, Barber argues for the first time on appeal that the obstruction of justice enhancement was based on facts neither charged in the indictment nor submitted to the jury, in violation of the Sixth Amendment. See United States v. Booker, 543 U.S. ___, ___, 125 S. Ct. 738, 749-56 (2005).

*A. Motion to Suppress*

We employ a two-step analysis to assess the constitutionality of the decision

4

by a district court to admit out-of-court identifications. See Cikora v. Duffer, 840 F.2d 893, 895 (11th Cir. 1988). "First, we must determine whether the original identification procedure was unduly suggestive. If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable." Id. Factors to be considered in determining whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification. See Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972).

The district court concluded that the identification procedure was not impermissibly suggestive. This conclusion is subject to a clearly erroneous standard. See Cikora v. Duffer, 840 F.2d at 896. "In reviewing the denial of a motion to suppress, we construe the facts in the light most favorable to the prevailing party below." United States v. Fernandez , 58 F.3d 593, 596 (11th Cir. 1995).

Construing the facts most favorably to the government, the district court did not clearly err when it found that neither the photographic lineup nor the identification procedure was unduly suggestive. Although John Hayes testified at the motion hearing that he could not remember whether his mother's intials were

on the photographic array when he made the identification, both Katherine Hayes and the detective who conducted the lineup testified at the motion hearing that Mrs. Hayes's initials were not on the array that was shown to John. In addition, the hair color in Barber's photograph was not so different from those in the other photographs that we could conclude that the district court clearly erred when it found the photographic lineup not unduly suggestive. Barber's contention that a minor difference in hair color necessarily renders a photographic lineup unduly suggestive is not supported by our precedent. See United States v. Weldon, 826 F.2d 1018, 1021 (11th Cir. 1987). Because we conclude that the district court did not clearly err when it found neither the lineup nor identification procedures suggestive, we do not need to proceed to the second step to determine whether the identification was unreliable.

### B. Obstruction of Justice

A court may impose a two-level enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." U.S.S.G. § 3C1.1 The comments to U.S.S.G. section 3C1.1 provide a non-exhaustive list of examples of the types of conduct to which the adjustment applies and include "threatening, intimidating, or otherwise

6

unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id. cmt. at 4(a). "The district court's determination that a defendant has obstructed justice is a factual finding which must be affirmed unless it is clearly erroneous." United States v. Kramer, 943 F.2d 1543, 1552 (11th Cir. 1991) (citation omitted).

Barber's argument fails. The evidence at sentencing showed that Barber told his co-defendant, Boyd, to lie to authorities regarding his involvement in the burglary, and Barber pressured and solicited his family to pressure Boyd to continue to tell authorities that he was not involved. The district court did not clearly err when it found that Barber had obstructed justice and applied the enhancement.

### C. Sixth Amendment Violation

Barber's argument that the enhancement of his sentence violated the Sixth Amendment is reviewed for plain error. We "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.

7

2005) (quotations and citations omitted).

The first prong of the plain error test is satisfied. Under a mandatory guidelines system, the district court enhanced Barber's sentence as a result of findings made by the judge that went beyond the facts admitted by Barber or found by the jury. The enhancement was based on the judge's findings regarding obstruction of justice, and it increased Barber's base offense level, guideline range, and sentence under a mandatory guidelines system.

The second prong of the plain error test is also satisfied. "[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." Id. at 1297. Although the error was not "plain" at the time of sentencing, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal – it is enough that the error be 'plain' at the time of appellate consideration." Johnson v. United States, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549 (1997). This error is now plain under Booker.

Barber, however, fails to satisfy the third prong of the plain error test. The third prong "requires that an error have affect[ed] substantial rights, which almost always requires that the error must have affected the outcome of the district court

8

proceedings." Rodriguez, 398 F.3d at 1299 (quotations and citations omitted). "It is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice." United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993). "In applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Rodriguez, 398 F.3d at 1301.

Barber has not established that he would have received a more lenient sentence had the district court considered the Guidelines advisory as opposed to mandatory. The district court sentenced Barber at the highest point in the guidelines range. Even if Barber's sentence had been at the lowest point in the guideline range, the likelihood of a different result would be speculative without a clear statement from the district court that, but for the mandatory nature of the guidelines, the court would have imposed a lighter sentence. See id. Because it is unclear whether the district court would have imposed a different sentence if it had applied the Guidelines in an advisory fashion, Barber has not established a reasonable probability that the result of his sentencing would have been different but for the Booker error. See id. We need not apply the fourth prong of the plain error test.

9

## III. CONCLUSION

The district court did not clearly err when it denied the motion to suppress and when it applied the enhancement for obstruction of justice.  Barber also failed to establish a reasonable probability that the Booker error affected the outcome of his sentencing.

**AFFIRMED.**

10