[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12446
Non-Argument Calendar

_____

D. C. Docket No. 06-80179-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL CHANCE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 15, 2008)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Michael Chance appeals his convictions for robbery of a bank by use of a

firearm, 18 U.S.C. § 2113(a), (d), attempted robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), two counts of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii), and possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(e). Chance argues that the district court erred when it denied his motions for a judgment of acquittal and mistrial. We affirm.

## I. BACKGROUND

Chance entered the CVS pharmacy store in Coconut Creek, Florida, and approached clerk Francisco Gonzales. Chance asked to purchase cigarettes and, when Gonzales returned to the register, Chance withdrew a gun from the waistband of his pants, explained that it was not a toy, ejected a bullet on the counter, and instructed Gonzales that he had a few seconds to "give [Chance] the money." Gonzales was unable to recall the code to open his register, and Chance left empty-handed.

Chance next drove to the Washington Mutual Bank in Boca Raton, Florida, and approached teller Patricia DeMarco. Chance told DeMarco, "[n]o dye packs and don't set off the alarm," then placed a gun on the counter and rested his finger on the trigger. DeMarco, who was "petrified," stacked increments of $1, $5, and $100 bills on the counter. DeMarco left without incident.

The next day, DeMarco identified Chance in a photographic line-up. Special

Agent John MacVeigh of the Federal Bureau of Investigation reviewed photographs printed from the surveillance camera inside the bank and recognized the individual as Chance. Chance's brother, Ray Chance, also identified Chance as the robber.

Special Agent Roger Higgins of the Federal Bureau of Investigation identified Chance from the surveillance video of the CVS store. Detective Kevin Vernetti compiled a photo array that included a picture of Chance for Gonzales to examine. Gonzales identified Chance in "a few seconds."

A federal grand jury indicted Chance for robbery of the Washington Mutual Bank by use of a firearm, 18 U.S.C. § 2113(a), (d); attempted robbery of a CVS Pharmacy in violation of the Hobbs Act, 18 U.S.C. § 1951(a); two counts of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(e); and possession of a stolen firearm, 18 U.S.C. §§ 922(j), 924(a)(2). Before trial, the parties stipulated that Chance had been convicted previously of a felony offense.

At trial, Vernetti stated that he prepared a photo array for Gonzales to review and stated that he used a prison photograph of Chance. Chance objected and moved to strike Vernetti's testimony. The district court granted the motion, directed the jury to "disregard the last response," and instructed the jury to "limit"

the information that it considered "to what the detective himself did." Chance "reserve[d] a motion to make later."

Vernetti also testified that he might have told Gonzales that the suspect had been arrested. Vernetti testified that he did not identify the suspect, and Vernetti did not tell Gonzales there was a photograph of the suspect in the array.

Chance moved for a mistrial because Vernetti said that Gonzales was in prison and the photographic lineup was unduly suggestive. The district court denied the motion. The district court ruled that mentioning the word "prison" was not unduly prejudicial and had been cured by an instruction to the jury. The district court acknowledged that Vernetti's statements to Gonzales about the photo array were a "deviation from the norm," but ruled that the remarks did not affect the pre-trial identification.

Brian Ray testified that his Beretta .40 caliber pistol had been stolen from his home. After an investigator left his house, Ray discovered that a check had been removed from his checkbook. A copy of the check showed that it had been made payable to Chance. On cross-examination, Ray denied that he had used drugs or allowed anyone to use drugs in his home.

To impeach Ray, Chance called Shannon Wallace, Chance's niece. Wallace testified that she had used cocaine with Ray and observed Ray smoke crack

cocaine in his home. Special Agent Roger Higgins testified in rebuttal that Ray did not have any prior convictions for drug-related crimes, but Ray might have mentioned that he had smoked crack cocaine in the past.

Chance moved for a mistrial and argued that the government failed to disclose information about Ray's drug use. The district court denied the motion. The district court ruled that defense counsel had impeached Ray and the jury could resolve the contradictions in the testimony. The jury acquitted Chance on the charge of possession of a stolen firearm, but convicted him on the remaining counts of the indictment.

## II. STANDARD OF REVIEW

We review <u>de novo</u> the sufficiency of the evidence and view the evidence in the light most favorable to the government. <u>United States v. Martinez</u>, 83 F.3d 371, 373–74 (11th Cir. 1996). We review the denial of a mistrial for an abuse of discretion. <u>United States v. Diaz</u>, 248 F.3d 1065, 1101 (11th Cir. 2001).

## III. DISCUSSION

Chance makes two arguments on appeal. First, Chance challenges the sufficiency of the evidence to support his convictions for armed robbery of a bank, attempted robbery, and brandishing a firearm during crimes of violence. Second, Chance challenges the denial of his motions for a mistrial.

*A. The Government Introduced Sufficient Evidence to Support*
*Chance's Convictions.*

Chance challenges his convictions on three grounds. First, Chance argues that the government failed to present sufficient evidence to support his convictions for bank robbery and the attempted robbery of the CVS Pharmacy. Second, Chance contends that the government did not establish that he intimidated the bank teller. Third, Chance contends that the government did not establish that he "brandished" a firearm during the robberies. These arguments fail.

A reasonable jury could find that the government presented sufficient evidence that Chance robbed a bank using a firearm. 18 U.S.C. § 2113(a), (d). DeMarco testified that Chance walked to her teller counter inside the Washington Mutual Bank, told DeMarco, "[n]o dye packs and don't set off the alarm," then placed a gun on the counter and rested his finger on the trigger. DeMarco identified Chance in a photographic line-up and verified her identification at trial. Although DeMarco wavered briefly during her in-court identification, the credibility of her identification rested with the jury. See Chastain, 198 F.3d at 1351. In addition, Agent MacVeigh and Chance's brother identified Chance in photographs printed from the bank surveillance video.

The government also introduced ample evidence that Chance attempted to rob the CVS pharmacy. 18 U.S.C. § 1951(a). Gonzales testified that Chance drew

6

a gun, explained that it was not a toy, ejected a bullet on the counter, and instructed Gonzales that he had a few seconds to "give [Chance] the money." After Gonzales was unable to recall the code to open his register, Chance left empty-handed. Gonzales identified Chance in a pre-trial photographic line-up and at trial.

The government also proved that Chance intimidated DeMarco during the bank robbery. Id. § 2113(a). Intimidation occurs "'when an ordinary person in [a bank] teller's position reasonably could infer a threat of bodily harm.'" United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996) (quoting United States v. Higdon, 832 F.2d 312, 315 (5th Cir. 1987)). DeMarco testified that Chance laid a gun on the counter and rested his finger on the trigger. A reasonable person could infer that Chance threatened to shoot DeMarco if she refused to relinquish the money in her bank drawer.

The government presented sufficient evidence that Chance brandished a firearm during both the bank robbery and the attempted robbery of the CVS Pharmacy. The term "brandish" is defined as the "display [of] all or part of the firearm[.]" 18 U.S.C. § 924(c)(4). DeMarco testified that Chance laid a gun on the counter during the bank robbery. Gonzales testified that Chance pointed a gun at him when he instructed Gonzales to "give [Chance] the money."

7

*B. The District Court Did Not Abuse Its Discretion by Denying Chance's Motions for a Mistrial.*

Chance challenges the denial of his motions for a mistrial on three grounds. First, Chance argues that a detective's use of the word "prison" during his testimony was prejudicial. Second, Chance maintains that a pre-trial identification was tainted by comments that the detective made before Gonzales reviewed the photo array. Third, Chance contends that the government committed prosecutorial misconduct when it failed to disclose evidence about the drug use of a witness. These arguments fail.

The district court did not abuse its discretion by refusing to grant a mistrial based on a detective's remark. The isolated comment by Detective Vernetti that Chance had been in prison did not substantially prejudice Chance, who had stipulated that he was a convicted felon. See United States v. Villabona-Garnica, 63 F.3d 1051, 1058 (11th Cir. 1995). The district court also eradicated any potential prejudice when it immediately instructed the jury to "disregard the response." See Diaz, 248 F.3d at 1101.

Chance also was not entitled to a mistrial based on the in-court identification by Gonzales. Detective Vernetti's remark that the suspect had been captured was not suggestive because Vernetti did not identify the suspect or which individual in the photo array had been arrested. See Cikora v. Dugger, 840 F.2d 893, 896–97

8

(11th Cir. 1988). The pre-trial line-up did not taint Gonzales's in-court identification. See United States v. Smith, 459 F.3d 1276, 1293–94 (11th Cir. 2006).

The district court did not abuse its discretion by denying a mistrial based on the alleged failure of the government to disclose that Brian Ray used drugs. Ray's false statements did not influence the outcome of the trial. The jury discredited Ray's testimony that Chance stole a Beretta .40 caliber pistol from Ray's home and acquitted Chance on the charge of possession of a stolen weapon.

Chance's convictions are **AFFIRMED**.

9