[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10925
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00037-WCO-JCF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAX FELIX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 19, 2014)

Before WILSON, ROSENBAUM and KRAVITCH, Circuit Judges.

PER CURIAM:

Max Felix appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He contends that (1) the district court erred by failing to suppress unduly suggestive and unreliable out-of-court identifications by two witnesses; (2) the court erred in admitting prior-bad-acts evidence of a 2010 traffic stop where Felix was found to be in possession of a firearm; and (3) the evidence presented at trial was insufficient to sustain his conviction. After a thorough review, we affirm.

## I.

The charge against Felix arose from an investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) into a fatal shooting in Randolph, Massachusetts. Felix filed a pretrial motion to suppress the identification of him by two witnesses, Danny Tanner and Eddie Ramon Turner, through a photographic lineup. Felix argued that the photographic array was unduly suggestive because: (1) he was the only individual that had hair and was not visibly balding; (2) he was one of only two people pictured with facial hair; and (3) while the other photographs were in color, his picture resembled a black-and-white photograph in poor resolution.

A magistrate judge held a hearing on the motion to suppress where the government presented the followed evidence: ATF Agents traced the firearm used in the Massachusetts shooting to Tanner, a Georgia resident. Tanner told ATF

2

Agents that he had sold the firearm to a person named "Max," he did not know "Max's" last name, and that his friend Turner had arranged the sale. Special Agent Lance Greer interviewed Tanner in March 2012 and showed him a photo lineup. He told Tanner that he wanted him to look at the photographs to see if he recognized "Max" or the person to whom he sold the firearm. But Agent Greer never indicated whether "Max" was in the lineup. Tanner studied the lineup for approximately a minute and then identified one of the photographs as "Max" with about 30-percent confidence. Later that day, Agent Greer went to Turner's residence to show him the lineup. They did not discuss Tanner's earlier identification. After looking at the lineup, Turner immediately identified the same photograph as "Max" with a 100-percent certainty.

During the suppression hearing, Turner testified that he had worked at a Home Depot warehouse with "Max" between October 2007 and February 2008. Turner then pointed to Felix in the courtroom and identified him as "Max." Tanner in turn testified that he told Turner that he had a gun he wanted to sell. A few days later, Turner brought "Max" to Tanner's house and Tanner sold "Max" the firearm, clips, and ammunition for $300. Tanner testified that before the lineup, he did not have any contact with Turner or discuss any information about "Max." After the lineup, however, Turner told Tanner that he was 100-percent certain "Max" was in lineup. Tanner also admitted that during a recent Google search, he learned

3

"Max's" last name and viewed a photograph that resembled the same person who had come to his house and purchased the firearm. In a post-hearing brief, Felix asserted, among other things, that Turner's in-court identification of him should be suppressed because it was unreliable under the totality of the circumstances.

A magistrate judge recommended that the motion to suppress the two out-of-court identifications and Turner's in-court identification be denied on grounds that: (1) the photo lineup was not unduly suggestive because nothing about Felix's photograph called special attention to him; and (2) although Tanner's in-court identification had been tainted by post-lineup conversations and his online search, Turner knew Felix well enough that his identification remained reliable. Overruling Felix's objections, the district court adopted the recommendation and denied the motion to suppress.

Prior to the start of trial, the government moved *in limine* to admit "other crimes" evidence of a pistol found in Felix's possession by a Virginia State Trooper 18 months before the instant offense conduct. The district court granted the motion, noting that Felix's prior possession of a firearm as a convicted felon was "generally relevant on the issue of knowledge and intent" and admissible under Fed. R. Evid. 404(b). A jury found Felix guilty and the district court sentenced him to 57 months' imprisonment. This is Felix's appeal.

II.

4

A. Motion to Suppress

Felix first challenges the district court's denial of his motion to suppress both witnesses' out-of-court and Turner's in-court identifications because the photo lineup was unduly suggestive and created a substantial risk of misidentification.

When reviewing a denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). Further, when considering a ruling on a motion to suppress, we construe all facts in the light most favorable to the prevailing party—in this case, the government. *Id.* at 1235-36.

We employ a two-step analysis to assess the constitutionality of the decision by a district court to admit out-of-court identifications. *See Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). "First, we must determine whether the original identification procedure was unduly suggestive. If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable." *Id.* (citation omitted). Factors to be considered in determining whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time

5

between the crime and the identification. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

The district court must suppress an out-of-court identification if it presents "a very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, 565 U.S. ___, ___, 132 S.Ct. 716, 720 (2012) (citation omitted). Moreover, "[a]n in-court identification, even if preceded by a suggestive out-of-court identification procedure, is nevertheless admissible if the in-court identification has an independent source." *United States v. Cannington*, 729 F.2d 702, 711 (11th Cir. 1984). The factors used to determine whether an in-court identification had a reliable, independent basis are the same as for an out-of-court identification. *See id.* (citing the *Biggers* factors).

Construing the facts in the light most favorable to the government, we conclude that the district court properly found that neither the photographic lineup nor the identification procedure was unduly suggestive. First, the procedures used by the agents to obtain Turner's and Tanner's out-of-court identifications were not improper because they neither suggested which photographs the witnesses should have chosen, pressured them to make identifications, or indicated that Felix's photograph was actually in the array.

Second, the photo lineup contained eight same-size photographs of African-American men with shaved, balding, or close-cropped haircuts. Felix's photograph

6

had a similar background and resolution as all but one of the photographs, and nothing about Felix's photograph made it stand out from the others. The fact that Felix was one of only two men pictured without facial hair did not render the photo lineup unduly suggestive because the other men in the lineup had only very slight facial hair. Felix's contention that a minor difference in hair and facial features necessarily renders a photographic lineup unduly suggestive is not supported by our precedent. *See Williams v. Weldon*, 826 F.2d 1018, 1021-22 (11th Cir. 1987) (absent differences in appearance tending to isolate accused's photo, identification procedure not unnecessarily subjective solely because display did not depict persons of same race or ethnic group). Because we conclude that the district court did not clearly err when it found neither the lineup nor identification procedures suggestive, we do not need to proceed to the second step to determine whether the identification was unreliable.

The district court also did not err in refusing to suppress Turner's in-court identification because it was reliable under the totality of the circumstances. *See Cannington*, 729 F.2d at 711. Turner worked alongside Felix for a period of time and knew him well. Moreover, he identified Felix in the photo lineup with 100-percent certainty.

B. <u>Prior Bad-Acts Evidence</u>

7

Felix next argues that the district court erred by admitting prejudicial and improper prior-bad-acts evidence, namely, the March 2010 traffic stop in Virginia in which he was found to be in possession of a firearm, but never convicted. He maintains that this evidence should have been excluded under the Rule 403 balancing test because the prior charge was remote in time, involved a distinct factual situation, and bore little resemblance to the instant case where knowledge of the gun was not at issue.

Under Rule 404(b), evidence of other crimes or prior bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with [that] character," but it may be admissible to prove, among other things, the defendant's knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). To be admissible, the Rule 404(b) evidence must: (1) be relevant to an issue other than the defendant's character; (2) be proved sufficiently to permit a jury determination that the defendant committed the act; and (3) possess probative value that it is not substantially outweighed by the danger of unfair prejudice. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). Only the first and third elements are at issue here.

We conclude that the district court did not abuse its discretion by admitting evidence that, approximately 18 months prior to the date of the instant offense

8

conduct, Felix had been stopped by a Virginia State Trooper who found a different firearm in his car. This evidence was relevant to establishing that Felix knowingly possessed the firearm involved in this case. By entering a not-guilty plea, Felix made knowledge an issue in his case. *See Jernigan*, 341 F.3d at 1281-82 ("[T]he caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental).").

Additionally, because the evidence was vital to countering Felix's defense that he did not knowingly possess the firearm at issue in this case, its probative value was not obviously and substantially outweighed by the danger of unfair prejudice. *See United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (explaining that excluding evidence on grounds of undue prejudice "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility"). Moreover, the district court gave the jury a limiting instruction before the Trooper's testimony and again in the jury charge, thus mitigating any potential prejudice caused by the admission of the prior-bad-act evidence. *See United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007).

C. Sufficiency of the Evidence

Lastly, Felix asserts that the evidence was insufficient to support the jury verdict because the only evidence that Felix knowingly possessed the firearm came from Turner and Tanner, two incredible witnesses.[1]

We review *de novo* the sufficiency of the evidence to support a conviction, "viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (internal alteration omitted). We will not overturn a conviction on the grounds of insufficient evidence unless no rational trier of fact could find that the evidence establishes the defendant's guilt beyond a reasonable doubt. *Id.* The jury is free to choose among reasonable constructions of the evidence, and we must accept a jury's inferences and determinations of witness credibility. *United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004); *see also Wright*, 392 F.3d at 1273.

Section § 922(g)(1) makes it unlawful for a felon knowingly to possess a firearm that affected or was in interstate commerce. *See* 18 U.S.C. § 922(g)(1); *Wright*, 392 F.3d at 1273. "Possession can be shown by circumstantial as well as direct evidence" and "can be either actual or constructive." *Wright*, 392 F.3d at 1273.

---

[1] Felix preserved his insufficiency-of-the-evidence claim by unsuccessfully moving for judgment of acquittal under Fed. R. Crim. P. 29 after the government presented its case-in-chief and again at the close of all evidence.

10

We conclude that there was ample evidence from which a rational trier of fact could have found Felix guilty beyond a reasonable doubt.  Testimony from Turner and Tanner established that in late 2011, Tanner sold a firearm to "Max," an individual later identified as Felix.  Additionally, the government offered testimony from an ATF agent that the gun involved in this case had traveled in interstate commerce because it had been manufactured in Wisconsin, sold in Georgia, and eventually recovered in Massachusetts.  In addition to the government's evidence, Felix stipulated to the fact that he was a convicted felon on the day he was arrested.

Although Felix challenges the credibility of Turner and Tanner, we will not revisit the jury's determination about the credibility of witnesses unless the testimony involved facts that the witness "could not have possibly observed or events that could not have occurred under the laws of nature."  *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985).   In sum, viewing the evidence in the light most favorable to the government, the district court did not err in denying Felix's motion for judgment of acquittal.  *See Wright*, 392 F.3d at 1273.

**AFFIRMED.**

11